```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MYRLANDE VOLMAR,

                Plaintiff,          MEMORANDUM & ORDER
                                    07-CV-1418 (JS)(ARL)
        -against-

COLD SPRING HILLS CENTER FOR NURSING
AND REHABILITATION,

                Defendant.
----------------------------------X
APPEARANCES:
For Plaintiff:     Myrlande Volmar, pro se
                   209-30 86th Dr., Apt 2B
                   Queens Village, NY 11427

For Defendant:     Elana Ben-Dov, Esq.
                   Peckar & Abramson, P.C.
                   70 Grand Avenue
                   River Edge, NJ 07661
```

SEYBERT, District Judge:

Myrlande Volmar ("Volmar" or "Plaintiff") commenced this action on April 5, 2007, against Cold Spring Hills Center for Nursing and Rehabilitation ("Defendant" or "Cold Spring"). Plaintiff alleges discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (1994) ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112 et seq. ("ADA"). Presently before the Court is Defendant's motion for summary judgment. For the reasons set forth below, Defendant's motion is GRANTED.

BACKGROUND

The following facts are taken from the Parties' 56.1

Statement, Counter-Statement and the exhibits thereto.[1]

Defendant employed Plaintiff as a Certified Nursing Attendant from approximately January 19, 2002, to December 13, 2006. (Def's. R. 56.1 Statement ("Def's. Stmt.") ¶ 1.) Plaintiff never told anyone at Cold Spring that she is HIV-positive, and considered her condition private. (Id. ¶ 13.) Plaintiff does not know of anyone at Cold Spring who would have known about her condition or who would have read her medical examinations. (Id. ¶ 18.) Plaintiff believes that someone may have contacted her previous doctors without her permission.[2] Plaintiff further

---

[1] Plaintiff has an obligation to do more than merely deny or dispute a Rule 56.1 Statement of Fact. Rather, a "statement controverting any statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible." Local Civ. R. 56.1(d). Here, Plaintiff objects to several of Defendant's statements, yet fails to support her objections with a citation to evidence. However, given Plaintiff's pro se status, the Court has thoroughly reviewed the record to determine whether there is any issue of fact with respect to the statements Plaintiff disputes.

[2] When asked whether any of the medical records Cold Spring had on file reflected her HIV-positive status, the following colloquy took place:
Q:  Is there anything in the documents . . . which reflects that you are HIV positive?
A.: When they do the physical they call the doctor to investigate about everything. They call the doctor if she, when they first take your physical, right, you bring it to them. They make sure you get the phone number for the doctor and signature for the doctor, the address for the doctor. They call the doctor. They can write the doctor. And the doctor send them information without I know about it.
*********************
A.: See what I mean? Because my signature is on the paper they can call the doctor, wanted to know exactly the truth,

2

alleges that Defendant could have learned of her HIV-positive status by contacting North Shore Hospital; according to Plaintiff, the Vice-President of Cold Spring was friends with the Vice-President of North Shore, and therefore there was a possibility that Cold Spring contacted North Shore to inquire about Plaintiff. (Id. ¶¶ 19, 20.) Plaintiff bases her belief that the Vice-Presidents are friends primarily on a photo she saw of two individuals shaking hands. (Id. ¶ 20.) Plaintiff does not know if a conversation regarding her HIV-status did, in fact, take place. (Id. ¶¶ 21, 22.)

On August 2, 2002, Defendant suspended Plaintiff for three days for failing to provide care to a resident in a timely manner. (Id. ¶ 24; Def.'s Ex. 2.) Plaintiff was suspended on October 8, 2003, in part for inappropriately using a resident's property. On June 28, 2005, Plaintiff was suspended for insubordination, poor job performance, and inappropriate behavior.

---

```
        thing, you know?  They can do all kind of investigation
        without your permission.
Q:   Do you know if any of them called the doctors?
A.   How am I gonna know? Cold Spring is not mine.
Q    How –
A.   So they can make their phone call any time.  How am I going
     to find out about that if I don't hire private investigator?
     How am I going to hire private investigator to investigate
     what phone call they make, when they make it - -
*********************
Q.   As we sit here today, . . . is there anything in . . . these
     documents . . . that shows that you are HIV positive; yes or
     no?
A.   No.
```
Pl.'s Dep. 191, 192.

3

(Def.'s Ex. 4.)  On June 7, 2006, Plaintiff was suspended for failure to provide care in a timely manner.  (Def.'s Ex. 5.)

On June 13, 2006, Plaintiff filed a complaint with the New York State Division of Human Rights alleging that Defendant discriminated against her on the basis of her disability. Plaintiff did not inform anyone at Cold Spring that she had filed a complaint.  (Def's. Stmt." ¶ 15.)

On December 1, 2006, Plaintiff was on duty in the dining room when another employee brought in an elderly resident, L.G., with dementia.  (Id. ¶ 30.)  L.G. was agitated and did not want to be in the dining room.  (Id. ¶ 31.)  While in the dining room, L.G. flailed her arms, and yelled and screamed.  (Id.)  Plaintiff did not call for help.  (Id. ¶ 32.)  Randi Marquis ("Marquis"), Plaintiff's supervisor, came into the dining room and saw L.G. behaving in an agitated manner.  (Id. ¶ 33.)  Marquis asked Plaintiff to leave the dining room.  Plaintiff did not immediately do so, and instead responded, "I have dining room duty 3:30 to 4". (Id. ¶ 34.)  Marquis again asked Plaintiff to leave the dining room.

Marquis testified that she witnessed Plaintiff speaking loudly back at L.G. when she entered the dining room.  (Id. ¶ 36.) Jean Impert, a Certified Nursing Assistant, provided a written statement stating that he witnessed Volmar raising her voice at L.G.  (Def.'s Ex. 8.)  Mary Beth Heinicke ("Heinicke"), the

4

Director of Social Work, provided a written statement stating that she witnessed Plaintiff yelling at Marquis in the dining room. Heinicke also asked Plaintiff to leave the dining room because Plaintiff's yelling created an unproductive and agitated atmosphere in front of the resident. (Def.'s Ex. 9.) Bob Savarese provided a written statement stating that Plaintiff attempted to push a table in front of L.G., and L.G. became more agitated and pushed the table away. Savarese further stated that Plaintiff would not leave when asked by Marquis. (Def.'s Ex. 7.)

On December 13, 2006, Audrey Marchand ("Marchand"), Vice-President of Cold Spring, terminated Plaintiff. Marquis, Marchand, and Heinicke testified that they did not know that Plaintiff was HIV-positive. (Def.'s Ex. 8-10.)

On April 5, 2007, Plaintiff filed a Complaint with this Court alleging that Defendant discriminated against her on the basis of her disability in violation of the ADA and Title VII.

## DISCUSSION

I. Standard of Review on Summary Judgment

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." <u>Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.)</u>, 153 F.3d 61, 67 (2d Cir. 1998) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.

5

Ed. 2d 265 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "Mere conclusory allegations or denials will not suffice." William v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). Similarly, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41 (citing to Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment in a discrimination case, the court must "carefully scrutinize[]" an

6

employer's papers, affidavits, and depositions for "circumstantial proof which, if believed, would show discrimination." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994). Thus, a court should not grant an employer's motion for summary judgment unless "the evidence of discriminatory intent is so slight that no rational jury could find in plaintiff's favor." Viola v. Philips Medical Sys. of N. Am., 42 F.3d 712, 716 (2d Cir. 1994). Nevertheless, even though the Court must examine an employer's evidence closely, summary judgment remains available in all discrimination cases. See Weinstock, 224 F.3d at 41-42 ("The 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" (quoting McLee, 38 F.3d at 68)).

The Court is mindful that it must read a pro se litigant's papers "liberally, and . . . interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). That said, a "plaintiff's pro se status does not relieve [her] of the usual requirements of summary judgment." Cosby v. City of White Plains, No. 04-CV-5829, 2007 U.S. Dist. LEXIS 23770, at * 8 (S.D.N.Y. Feb. 9, 2007).

## II. Title VII Claims

A mandatory prerequisite to seeking federal relief under Title VII is the timely filing of a discrimination charge with the EEOC. See Paneccasio v. Unisource Worldwide, Inc., No. 06-CV-3950,

2008 U.S. App. LEXIS 15400, at *26 (2d Cir. July 7, 2008); Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). The discrimination charge must be filed within 300 days of the alleged discriminatory action. 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117.

This timeliness requirement is similar to a statute of limitations, and as such, can be tolled through waiver, estoppel, equity, or a continuing violation. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982). When a plaintiff files in an untimely manner, and does not establish a tolling exception, a claim for discrimination cannot be maintained. See Zerilli-Edenglass v. New York City Transit Auth., 333 F.3d 74, 76 (2d Cir. 2003). Here, it is clear to the Court that Plaintiff did not file an administrative charge with respect to her Title VII claims with either the EEOC or the New York State Division of Human Rights.

In any event, Plaintiff fails to set forth a cause of action under Title VII. To establish a claim of discrimination under Title VII, a plaintiff must show that: "1) [she] belonged to a protected class; 2) [she] was qualified for the position; 3) [she] suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) If a plaintiff establishes this prima

8

facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment actions. McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)

Plaintiff does not allege any protected class to which she belongs to and under which she claims Defendant discriminated against her. In fact, in the standard form complaint provided by the Pro Se Office of the Eastern District of New York, Plaintiff checked only the box next to disability discrimination, and did not check any of the boxes indicating race, color, gender/sex, religion, or national origin discrimination. However, in light of Plaintiff's pro se status, the Court has thoroughly reviewed the record and has found a statement by Plaintiff during her deposition that reveals that Plaintiff is Black (Pl.'s Dep. 218), and thus belongs to a class protected by Title VII. Nonetheless, there is absolutely no evidence in the record that Plaintiff suffered adverse employment actions because she is Black. Thus, Plaintiff fails to establish a prima facie case of discrimination under Title VII. Moreover even if Plaintiff properly brought a cause of action under Title VII and established a prima facie case, there is more than ample evidence to show that Defendant had legitimate, non-discriminatory reasons for terminating Plaintiff; Plaintiff was insubordinate, had poor work performance, and mishandled the incident involving L.G.

9

The Court finds that Plaintiff has not shown the existence of an issue of fact with respect to whether Defendant discriminated against her in violation of Title VII. The Court thus GRANTS summary judgment for Defendant on Plaintiff's Title VII Claims.

III. Claims of Discrimination Under the ADA

Plaintiff also claims that she was discriminated against on the basis of her HIV-positive status.

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that "(1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." Heyman v. Queens Village Committee for Mental Health, 198 F.3d 68, 72 (2d Cir. 1999).

Plaintiff cannot show that her termination or any other adverse action she suffered was a result of her disability. Plaintiff stated during her deposition that she did not tell anyone at Cold Spring that she was HIV-positive, nor does she know of anyone who knew of her disability. The Court rejects Plaintiff's supposition that Defendant could have learned about Plaintiff's status from North Shore Hospital. Plaintiff has not presented any evidence to create an issue of fact as to whether Cold Spring

learned of Plaintiff's status from North Shore; rather, Plaintiff relies on a picture of the Vice-President of North Shore Hospital shaking hands with the Vice-President of Cold Spring to support her accusation that North Shore Hospital and Cold Spring were affiliated and thus Cold Spring learned of her HIV-positive status from North Shore Hospital. Plaintiff's claim is completely conclusory and without merit.

The evidence reveals that Defendant did not know about Plaintiff's HIV-positive status, and thus could not have discriminated against Plaintiff on the basis of this status. See Matya v. Dexter Corp., 250 Fed. Appx. 408, 410 (2d Cir. 2007) (affirming district court's finding that plaintiff had failed to meet his prima facie burden under the New York State Human Rights Law because he failed to show that his superiors knew that he had been diagnosed with and was being treated for depression.); Brown v. Pension Bds., 488 F. Supp. 2d 395, 406 (S.D.N.Y. 2007) (finding that the evidence indicated that defendant and its employees were unaware of plaintiff's HIV status and thus it "played no role in [defendant's] decision to terminate his employment). Woolley v. Broadview Networks, No. 01-CV-2526, 2003 U.S. Dist. LEXIS 2716, at *24 (S.D.N.Y. Feb. 25, 2003) ("At the very least, the employer must have knowledge of the disability."); Pace v. Paris Maint. Co., 107 F. Supp. 2d 251, 262 (S.D.N.Y. 2000) (finding that "[w]ithout knowledge of [plaintiff's] disability, it is logically impossible

that Defendants removed [plaintiff] from the Building as a result of his disability."). There is no evidence in the record that Defendant was aware of Plaintiff's alleged disability, and thus Plaintiff has failed to show that she suffered any adverse action because of her HIV-positive status.[3]

Even if Plaintiff were to show that Defendant was aware of her disability, the record is clear that Plaintiff was terminated because of her insubordination, poor work performance, and mishandling of an incident involving a resident; there is nothing to indicate that Plaintiff was terminated because of her HIV-status. Accordingly, the Court GRANTS summary judgment for Defendant on Plaintiff's ADA claim.

CONCLUSION

For the reasons stated above, the Court GRANTS summary judgment for Defendant. The Clerk of the Court shall mark this matter closed and terminate all pending motions.

The Court certifies that an appeal of this Order would not be taken in good faith and therefore denies in forma pauperis

---

[3] The Court rejects Plaintiff's argument in her opposition papers that Margaret Lynch, Director of Infection Control, was aware of Plaintiff's disability. Plaintiff's statement is complete conjecture; Plaintiff has not presented any evidence to support this statement, and in fact, the evidence presented to the Court establishes the opposite. Lynch has provided an Affidavit stating that she did not know that Volmar was HIV-positive, Volmar never informed Lynch that she was HIV-positive, and Lynch did not learn of Plaintiff's HIV status from North Shore Hospital or any other doctor. (Lynch Aff. ¶ 1-3, 5-9.)

12

status for purposes of an appeal. The Court finds that an attempt to seek appellate review of the issues in this case would be frivolous. See Coppedge v. United States, 369 U.S. 438, 445, 82 S. Ct. 917, 920, 8 L. Ed. 2d 21, 28 (1962). ("We consider a defendant's good faith in this type of case demonstrated when he seeks appellate review of any issue not frivolous. In so doing, we note that if in forma pauperis litigation is attempted for reasons that may genuinely be characterized as the litigant's "bad faith," express authority exists in 28 U. S. C. § 1915 (d) for dismissal of the cause as frivolous.").

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   Central Islip, New York
         September   14  , 2009